IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE LEE SMITH, | ) | CASE NO.  5:19-CV-01496-JPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN EDWARD SHELDON, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Eddie Lee Smith ("Smith" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Smith is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entries of sentences in the cases *State v. Smith*, Nos. CR-2015-09-2837 and CR-2015-12-3774. For the following reasons, the undersigned recommends that the Petition be DISMISSED.

## I.      Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Smith's conviction as follows:

{¶1} Eddie Lee Smith appeals an order of the Summit County Court of Common Pleas that denied his motion to withdraw plea. For the following reasons, this Court affirms.

{¶2} In 2016, Mr. Smith pleaded guilty to counts of robbery and having a weapon under disability in one case and a count of obstruction of justice in a separate case. At sentencing, the trial court told Mr. Smith that it was sentencing him to 36 months imprisonment in the first case and 12 months imprisonment in the second case but that it was going to reserve those sentences and place him on community control for a period of 24 months. In its sentencing entry, the court wrote in both cases that it was sentencing Mr. Smith to 24 months of community control but indicated that, if Mr. Smith violated the conditions of community control, it could impose the reserve sentences of 36 and 12 months respectively.

{¶3} Following the sentencing hearing, Mr. Smith moved to withdraw his guilty plea, which the trial court denied. A few months later, the trial court found that Mr. Smith committed a community control violation, and it imposed the prison sentences that it had reserved.

{¶4} In March 2017 and May 2017, Mr. Smith filed motions to vacate void judgment. In November 2017 and January 2019, he filed motions for resentencing. The trial court did not grant any of those motions. In February 2019, Mr. Smith filed another motion to withdraw his guilty plea. The trial court denied his motion, and Mr. Smith has appealed, assigning two errors.

*State v. Smith*, 2020-Ohio-474, 2020 WL 703681, at *1 (Ohio Ct. App. Feb. 12, 2020).

## II.    Procedural History

**A.    Trial Court Proceedings**

On September 23, 2015, the Summit County Grand Jury indicted Smith on the following charges: one count of Aggravated Robbery in violation of O.R.C. § 2911.01(A)(1) with a Repeat Violent Offender Specification and a firearm specification; one count of Having Weapons While Under Disability in violation of O.R.C. § 2923.13(A)(2)/(3); one count of Improperly Handling Firearms in a Motor Vehicle in violation of O.R.C. § 2923.16(B)/(I)(2); and one count of Carrying Concealed Weapons in violation of O.R.C. § 2923.12(A)(2).  (Doc. No. 11-1, Ex. 1.)

On December 18, 2015, the Summit County, Ohio Grand Jury indicted Smith on one count of Carrying Concealed Weapons in violation of O.R.C. § 2923.12(A)(1); one count of Possession of Cocaine

2

in violation of O.R.C. § 2925.11(A)(C)(4); one count of Illegal Use or Possession of Drug Paraphernalia charge in violation of O.R.C. § 2925.14(C)(1); one count of Possession of Marijuana in violation of O.R.C. § 2925.11(A)(C)(3); and one count of having an open container in violation of O.R.C. § 4301.62(B)(4). (Doc. No. 11-1, Ex. 4.)

On March 23, 2016, Smith filed a waiver of counsel and request for stand-by counsel. (Doc. No. 11-1, Ex. 6.)  That same day, Smith also filed a motion to dismiss/abolish. (Doc. No. 11-1, Ex. 10.)

On April 5, 2016, the trial court held a hearing, accepted Smith's waiver of counsel, and appointed Attorney Vasilou as standby counsel. (Doc. No. 11-1, Ex. 9; Doc. No. 11-3, Vol. 1.)  Smith signed and executed a voluntary waiver of right to counsel form. (Doc. No. 11-1, Ex. 7.)

On April 8, 2016, Smith filed a petition for habeas corpus with the trial court. (Doc. No. 11-1, Ex. 11.)

On April 11, 2016, Smith filed a motion to dismiss/quash the indictment. (Doc. No. 11-1, Ex. 12.)

On April 12, 2016, having received permission from the trial judge at the waiver of counsel hearing to file such a motion on Smith's behalf, Smith's standby counsel filed a motion to sever. (Doc. No. 11-1, Ex. 8).

The trial court denied Smith's motion to dismiss/abolish but took the motion to sever under advisement. (Doc. No. 11-1, Ex. 9.)

On April 13, 2016, the trial court held a hearing on the remainder of Smith's pending motions, as well as Smith's motion to continue the trial date. (Doc. No. 11-3, Vol. 2.)  During that hearing, the trial court brought up the plea offer that had been made by the prosecution a week earlier. (*Id.* at PageID# 941.)  After some discussion on the record and pursuant to a negotiated plea agreement, with the benefit of stand-by counsel for Smith, the parties agreed the State would amend the Aggravated Robbery charge to a third-degree felony robbery charge in violation of O.R.C. § 2911.02(A)(3)(B). (*Id.* at PageID# 943-54.)

3

The parties further agreed that the sentences for the robbery and having weapons under disability charges would run concurrent to each other for no more than a three-year prison sentence and that the State would dismiss the remaining charges and specifications.  (*Id.* at 953-54.)  The parties also agreed the State would amend the charge in Smith's second case to obstructing justice and dismiss the remaining charges.  (Doc. No. 11-1, Ex. 18.)  Smith signed and executed written guilty plea forms.  (Doc. No. 11-1, Ex. 13, 17.)  After a colloquy with the trial court, Smith pled guilty to the robbery and having weapons under disability charges, as well as obstructing justice.  (Doc. No. 11-3, Vol. 2, PageID# 959-66.)  The trial court accepted Smith's guilty pleas and found Smith guilty of one count of robbery, one count of having weapons under disability, and one count of obstructing justice.  (*Id.* at 966.)

On May 24, 2016, the state trial court held a sentencing hearing.  (Doc. No. 11-3, Vol. 3.)  The trial court sentenced Smith to 24 months community control and reserved the right to impose a 36-month prison sentence on the robbery conviction and a 36-month concurrent prison sentence on the having weapons under disability conviction to be served consecutive to the sentence imposed in Case No. CR 2015-12-3774 for an aggregate 48-month prison sentence if Smith violated community control supervision terms. (Doc. No. 11-1, Ex. 15, 19.)  The trial court journalized Smith's sentencing entries on May 27, 2016.  (*Id.*)  On June 1, 2016, the trial court filed *nunc pro tunc* journal entries that corrected the sentencing entries by including that the remaining charges in the indictments were dismissed.  (Doc. No. 11-1, Ex. 16, 20.)

**B.      Post-Conviction Proceedings**

On June 30, 2016, Smith, *pro se*, filed a motion to withdraw his guilty pleas.  (Doc. No. 11-1, Ex. 21.)  On July 14, 2016, the State filed a response in opposition (Doc. No. 11-1, Ex. 22), to which Smith replied.  (Doc. No. 11-1, Ex. 23.)

4

The trial court denied Smith's motion in Case No. CR-2015-12-3774 on July 19, 2016 and denied Smith's motion in Case No. CR-2015-09-2837 on July 20, 2016.  (Doc. No. 11-1, Ex. 24-25.)  Smith did not timely appeal these decisions.  (Doc. No. 11-1.)

On July 22, 2016, Smith, *pro se*, filed a motion to dismiss/jurisdiction.  (Doc. No. 11-1, Ex. 26.)  On August 8, 2016, the State filed a response in opposition.  (Doc. No. 11-1, Ex. 27.)  The trial court denied Smith's motion.  (Doc. No. 11-1, Ex. 28.)  Smith did not timely appeal the decision.  (Doc. No. 11-1.)

On August 11, 2016, Smith, *pro se*, filed an "Affidavit/Complainant."  (Doc. No. 11-1, Ex. 29.)  On August 26, 2016, the State filed a memorandum in opposition asking the court to dismiss the affidavit and all pending motions.  (Doc. No. 11-1, Ex. 30.)

On August 30, 2016, the State charged Smith with violating the terms of his community control supervision.  (Doc. No. 11-1, Ex. 32.)

On September 8, 2016, Smith filed a "Notice Claim of Rights."  (Doc. No. 11-1, Ex. 31.)

In a September 9, 2016 journal entry, the trial court noted Smith stated on the record that he wished to represent himself.  (Doc. No. 11-1, Ex. 32.)  The trial court allowed Attorney Vasilou to withdraw, and because Smith stood mute, the trial court entered a technical not guilty plea on Smith's behalf.  (*Id.*)

On October 13, 2016, the trial court appointed Smith new legal counsel.  (Doc. No. 11-1, Ex. 33.)  On October 26, 2016, Smith filed a notice of waiver of counsel.  (Doc. No. 11-1, Ex. 34.)

On October 28, 2016, the trial court held a community control violation hearing.  (Doc. No. 11-1, Ex. 35; Doc. No. 11-3, Vol. 4.)  At the hearing, the trial court removed Attorney John Greven as counsel of record and appointed him as stand-by counsel for Smith.  (Doc. No. 11-1, Ex. 35.)  After hearing the evidence, the trial court found Smith had violated his community control supervision conditions and

imposed a 36-month prison sentence for his robbery conviction and a concurrent 36-month prison sentence for his having weapons under disability conviction, to be served consecutively to a 12-month sentence imposed for the obstructing justice conviction in Case No. 2015-12-3774, for a total of 48 months.  (Doc. No. 11-1, Ex. 35, 36.)  The trial court later filed a *nunc pro tunc* entry in Case No. CR-2015-12- 3774.  (Doc. No. 11-1, Ex. 37.)

Smith did not timely file an appeal in either case.  (Doc. No. 11-1.)

On December 12, 2016, Smith filed a "Proclamation/Notice" (Doc. No. 11-1, Ex. 38) and a "Notice of Jurisdiction Challenge."  (Doc. No. 11-1, Ex. 39.)  On December 30, 2016, the trial court denied Smith's motion to challenge jurisdiction.  (Doc. No. 11-1, Ex. 40.)

Smith did not timely file an appeal in either case.  (Doc. No. 11-1.)

On March 27, 2017, Smith filed a motion to vacate void judgment and order sentencing hearing. (Doc. No. 11-1, Ex. 41.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 42.)  On March 30, 2017, the trial court denied Smith's motion to vacate void judgment and order sentencing hearing.  (Doc. No. 11-1, Ex. 43, 44.)

Smith did not timely file an appeal in either case.  (Doc. No. 11-1.)

On May 8, 2017, Smith filed another motion to vacate void judgment and order sentencing hearing.  (Doc. No. 11-1, Ex. 45.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 46.)  On May 30, 2017, the trial court denied Smith's motion, finding that if Smith's motion was a motion for reconsideration it was a nullity, and if it was a new motion, it was barred under res judicata.  (Doc. No. 11-1, Ex. 47.)

Smith did not timely file an appeal.  (Doc. No. 11-1.)

On June 2, 2017, Smith filed an "Official Legal Notice and Request for Good Cause Shown to Obtain Documents Pursuant to Superintendence Rule 47(A)(1)."  (Doc. No. 11-1, Ex. 48.)

On June 23, 2017, Smith filed a "Beneficiary Notification, under Contract Law of Power of Attorney; Of Limited Fiduciary Trusteeship Duty to the Public Trusts of Office in Account/Cases, CR-2015-09-02837 & 20156-12-3774."  (Doc. No. 11-1, Ex. 49.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 50.)

On November 13, 2017, Smith filed a Motion for Resentencing and Clarification of Judgment setting forth the following claims:

1. The trial court erred when it failed to notify Mr. Smith of his rights pursuant to Criminal Rule 32(B) thereby denying him due process and equal protection in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article IV, Section 3 of the Ohio Constitution and R.C. § 2953.02.

2. The trial court violated the due process guarantees of the Fourteenth Amendment by failing to allow Mr. Smith to be neutral and detached during the probation violation hearing and relying on facts not in evidence in sentencing Mr. Smith.

3. The trial court erred in imposing a prison sentence for a community control violation when it failed to notify Smith of the specific term that would be imposed in the event of such a violation at the original sentencing hearing.

4. The trial court erred, abused its discretion and commits plain error in sentencing Smith by failing to make findings pursuant to R.C. § 2951.01(A)-(B) which violated his rights under the Ohio Const. Art. I, § 2, and the Fifth and Fourteenth Amendments to the U.S. Constitution.

(Doc. No. 11-1, Ex. 51.)  The State filed a response in opposition (Doc. No. 11-1, Ex. 52), to which Smith replied.  (Doc. No. 11-1, Ex. 53.)

On January 11, 2018, the trial court denied Smith's motion for resentencing.  (Doc. No. 11-1, Ex. 54.)

Smith did not timely file an appeal in either case.  (Doc. No. 11-1.)

On January 15, 2019, Smith filed a Motion for Resentencing.  (Doc. No. 11-1, Ex. 63.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 64.)  On February 1, 2019, the trial court denied Smith's Motion for Resentencing.  (Doc. No. 11-1, Ex. 65.)  On February 8, 2019, Smith filed a post-

7

judgment response to the State's memorandum (Doc. No. 11-1, Ex. 66), but did not timely appeal the trial court's decision.  (Doc. No. 11-1.)

On February 7, 2019, Smith filed a motion to withdraw guilty plea pursuant to Ohio Crim.R. 32.1. (Doc. No. 11-1, Ex. 67.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 68.)  On February 14, 2019, the trial court denied Smith's motion on the merits and on the procedural ground of *res judicata*. (Doc. No. 11-1, Ex. 69.)

On February 28, 2019 Smith filed a response to the State's memorandum regarding his January 15, 2019 motion for resentencing.  (Doc. No. 11-1, Ex. 70.)  The State filed a response in opposition, arguing that whether Smith's response was regarding his January 15, 2019 motion or his February 7, 2019 motion, Smith's response was moot since both motions had already been denied.  (Doc. No. 11-1, Ex. 71.)

On April 4, 2019 and April 15, 2019, Smith filed motions for leave to file a delayed appeal of the trial court's February 14, 2019 decision.  (Doc. No. 11-2, Ex. 72, 73.)  On May 7, 2019, the state appellate court granted Smith leave to file a delayed appeal and consolidated the two appeals under Case Nos. 29357 and 29367.  (Doc. No. 11-2, Ex. 74.)  Although the trial court appointed Smith legal counsel for his appeals (Doc. No. 11-2, Ex. 75, 76), Smith objected to the appointment of counsel and requested to represent himself.  (Doc. No. 11-2, Ex. 77.)  On May 19, 2019, appointed appellate counsel moved to withdraw.  (Doc. No. 11-2, Ex. 78.)

Smith raised the following assignments of error on collateral appeal:

> 1.      THE TRIAL COURT ABUSE [SIC] ITS DISCRETION AND ERRED IN VIOLATION OF SMITH'S DUE PROCESS RIGHTS UNDER THE UNITED STATES CONSITUTION WHEN IT APPLIED THE WRONG STANDARD IN DENYING APPELLANT'S APPLICATION TO WITHDRAW GUILTY PLEAS.

8

> 2.    THE TRIAL COURT LITIGATED IN MATTERS OF WHICH SUBJECT-MATTER JURISDICTION WAS NOT ESTABLISHED AND WHICH VIOLATED APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS

(Doc. No. 11-2, Ex. 79.)

On May 28, 2019, in Case No. CR-2015-12-3774, Smith filed a motion to dismiss the indictment or stay the judgment entered.  (Doc. No. 11-2, Ex. 81.)  The State filed a response in opposition (Doc. No. 11-2, Ex. 82), to which Smith replied.  (Doc. No. 11-2, Ex. 83.)

On July 2, 2019, in Case No. CR-2015-12-3774, Smith filed a Motion to Stay.  (Doc. No. 11-2, Ex. 84.)  The State filed a response in opposition.  (Doc. No. 11-2, Ex. 85.)

On August 26, 2019, Smith filed a Motion to Proceed to Judgment in both cases.  (Doc. No. 11-2, Ex. 86.)  The State filed a response in opposition.  (Doc. No. 11-2, Ex. 87.)

On February 12, 2020, the state appellate court affirmed the trial court's denial of Smith's motion to withdraw guilty plea.  *State v. Smith*, 2020 WL 703681, at *2.

Smith did not timely appeal to the Supreme Court of Ohio.[1]

## C.    Delayed Direct Appeal

On April 13, 2018, Smith filed an untimely notice of appeal regarding the trial court's May 2016 sentencing entries (Doc. No. 11-1, Ex. 55), along with a motion for leave to file a delayed appeal and appointment of counsel.  (Doc. No. 11-1, Ex. 56.)  The State filed a response in opposition.  (Doc. No. 11-1, Ex. 57.)

On May 2, 2018, the state appellate court denied Smith leave to file a delayed direct appeal and dismissed Smith's attempted appeal.  (Doc. No. 11-1, Ex. 58.)

---

[1] Searching the Supreme Court of Ohio docket for Smith's name yielded no cases filed after 2018.  *See* www.supremecourt.ohio.gov/Clerk/ecms/#/search (last visited Feb. 1, 2021.)

On June 18, 2018, Smith, timely filed a notice of appeal in the Ohio Supreme Court. (Doc. No. 11-1, Ex. 59.) Smith raised a single proposition of law in his jurisdictional memorandum:

> 1. Crim.R. 32 provisions are mandatory duties to which a trial court must adhere.

(Doc. No. 11-1, Ex. 60.) The State filed a waiver of memorandum in response. (Doc. No. 11-1, Ex. 61.)

On August 1, 2018, the Ohio Supreme Court declined to accept jurisdiction of Smith's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 11-1, Ex. 62.)

Smith did not timely file a petition for certiorari in the United States Supreme Court. (Doc. No. 11-1.)

## D. State Habeas Petitions

On June 14, 2017, Smith filed a habeas petition claiming he was being held for crimes with which he had not been charged and that the trial court lacked subject matter jurisdiction. (Doc. No. 11-2, Ex. 88, 90.) The Respondent Warden filed a motion to dismiss. (Doc. No. 11-2, Ex. 89.) On February 5, 2018, the state appellate court dismissed Smith's habeas petition for failure to comply with the procedural requirements. (Doc. No. 11-2, Ex. 90.)

Smith did not timely file an appeal in the Ohio Supreme Court. (Doc. No. 11-2.)

On June 15, 2018, Smith filed a habeas petition asserting that his sentence was void and his guilty pleas were not knowingly, intelligently, voluntarily made. (Doc. No. 11-2, Ex. 91.) The Respondent Warden filed a motion to dismiss or alternatively, for summary judgment. (Doc. No. 11-2, Ex. 92.) On August 8, 2018, the state appellate court denied and dismissed Smith's habeas petition. (Doc. No. 11-2, Ex. 93.)

On August 23, 2018, Smith timely filed a notice of appeal in the Ohio Supreme Court. (Doc. No. 11-2, Ex. 94.) Smith's brief contained the following propositions of law:

1.  Appellant's sentences are void in violation of Ohio laws and sentencing provisions. Crim.R. 32(C); R.C. 2929.11 through 2929.19.

2.  Community control sanctions (R.C.2929.01 (E) and prison terms (R.C.2929.14) are mutually exclusive and cannot be imposed at the same time for the same offense.

3.  R.C. 2929.15 provides the procedure if someone violates community control sanctions.

4.  Appellant's convictions are in violation of Ohio Const. Article I, section 10; 5th & 14th amendments of the United States Constitution and the trial court litigated in matters it did not have subject matter jurisdiction.

5.  Appellant was denied effective assistance of counsel and his constitutional right of self-representation in violation of his 6th Amendment under the U.S. Constitution.

6.  Appellant has no adequate remedy in the ordinary course of law; Habeas corpus is cognizable to appellant's grounds for relief.

(Doc. No. 11-2, Ex. 95.)  Respondent filed a brief in response.  (Doc. No. 11-2, Ex. 96.)

On May 7, 2019, the Ohio Supreme Court affirmed the state appellate court judgment.  (Doc. No. 11-2, Ex. 97.)

## E.    Federal Habeas Petition

On June 23, 2019,[2] Smith filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**:  The trial court did not have subject-matter jurisdiction or authority to convict me of the offenses, I am presumed to be convicted of.

**Supporting Facts**:  On April 13, 2016, the trial court judge without prompting initiated a non-negotiated plea deal. Being under duress, I was induced to entering guilty pleas. I was coerced by being released that day on bond, which was

---

[2]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until June 28, 2019, Smith states that he placed it in the prison mailing system on June 23, 2019.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on June 23, 2019.

revoked. I was never notified of any amendments to any indictments. Two of the presumed offenses were not founded by a grand jury and one in particular does not charge an offense under Ohio law.

**GROUND TWO**:  The initial trial court's judgment regarding sentencing were [sic] void ab initio.

> **Supporting Facts**:  Under Ohio law if you are convicted of a felony, you are either sentenced to prison or community control sanctions, which are mutually exclusive. On May 24, 2016 the trial court imposed prison terms, suspend[ed] those prison terms and placed me on 24 months community control sanctions. The judgment of convictions makes no reference of the suspended prison terms or regarding case # CR 15-09-2837, there is no sentence for any count individually.

**GROUND THREE**:  I was coerced/induced to enter guilty by the actions of the trial court judge.

> **Supporting Facts**:  On April 13, 2016, I was summon[ed] or transferred to the Summit County Court House [sic] from the Summit County Jail. The subject-matter was regarding my pretrial motions. Please note I was self-representing myself, as I waived my constitutional right to counsel. Without prompting the trial court judge initiated a non-negotiated plea the State offered weeks prior that was rejected. I felt I could not receive a fair trial and that the judge was bias [sic]. The discussion of a non prison sanction, and getting out of the county jail that day, which I in jail on a revoked bond. I folded and entered guilty pleas, that were not intelligently, voluntarily, or knowingly made.

(Doc. No. 1.)

On October 28, 2019, Warden Edward Sheldon ("Respondent") filed his Return of Writ. (Doc. No. 11.)  Smith filed a Traverse on January 28, 2020 (Doc. No. 21), to which Respondent replied.  (Doc. No. 22.)

### III. Non-cognizability

**A.      Ground One**

In Ground One, Smith argues the trial court lacked subject matter jurisdiction or authority to convict him.  (Doc. No. 1.)  As Respondent correctly asserts (Doc. No. 11 at 27), this claim concerns a

12

matter of state law and is not cognizable on federal habeas review. *Armstrong v. Wainwright*, No. 1:18CV1133, 2018 WL 8050904, at *10 (N.D. Ohio Dec. 20, 2018), *report and recommendation adopted by* 2019 WL 160994 (Apr. 17, 2019) ("These claims are not cognizable because subject matter jurisdiction, venue, and compliance with Ohio rules are all issues of state law and, therefore, are not cognizable on federal habeas review.") (collecting cases). *See also Davis v. Eppinger*, No. 1:18 CV 2911, 2019 WL 626426, at *1 (N.D. Ohio Feb. 14, 2019) ("'A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary.'") (quoting *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam)); *Washington v. Morgan*, No. 5:12 CV 00084, 2014 WL 5465845, at *2 (N.D. Ohio Oct. 28, 2014) ("The Court rejects this argument, because it is not cognizable on habeas review: 'The determination of whether a particular state court is vested with jurisdiction under state law and is the proper venue to hear a criminal case is a function of the state courts, not the federal judiciary.') (quoting *Kincaid v. Klee*, 1:13–CV–12278, 2013 WL 3817357 (E.D. Mich. July 23, 2013) (additional internal quotation marks omitted).

Therefore, Ground One should be dismissed as non-cognizable.

## B. Ground Two

In Ground Two, Smith argues the trial court's judgment regarding sentencing was "void ab initio" because "[u]nder Ohio law if you are convicted of a felony, you are either sentenced to prison or community control sanctions which are mutually exclusive." (Doc. No. 1 at 7.) Smith asserts that the trial court imposed prison terms, suspended the prison terms, and then placed Smith on community control. (*Id.*) In addition, Smith argues the journal entries of sentence "make[] no reference of the suspended prison terms or regarding case # CR 15-09-2837, there is no sentence for any count individually." (*Id.*)

Respondent argues that to the extent Ground Two "raises strictly state law sentencing claims," such claims are not cognizable on federal habeas review. (Doc. No. 11 at 34.)

13

In his Traverse, Smith states: "The first point or fact that needs to addressed [sic] and dispensed with is that, [sic] Smith's grounds for relief are based upon strictly state law or procedures; however, the state trial court, prosecution, and the clerk of courts, violated the petitioner's due process rights . . . ." (Doc. No. 21 at 24.)  However, Smith then goes on to argue that Respondent "gives no examples that the petitioner's sentence(s) are legal under state law."  (*Id.*)

The Court agrees with Respondent that to the extent Smith raises strictly state law sentencing claims, such claims are not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  For the reasons set forth later in this Report and Recommendation, the remainder of Smith's claims in Ground Two, namely his due process claims, should be dismissed as procedurally defaulted.

## IV. Exhaustion and Procedural Default

### A.    Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with

the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B. Application to Petitioner

### 1. Ground Two

In Ground Two, Smith argues the trial court's judgment regarding sentencing was "void ab initio" because "[u]nder Ohio law if you are convicted of a felony, you are either sentenced to prison or community control sanctions which are mutually exclusive."  (Doc. No. 1 at 7.)  Smith asserts that the trial court imposed prison terms, suspended the prison terms, and then placed Smith on community control. (*Id.*)  In addition, Smith argues the journal entries of sentence "make[] no reference of the suspended prison terms or regarding case # CR 15-09-2837, there is no sentence for any count individually."  (*Id.*)

Respondent argues, "Smith's failure to raise his federal constitutional claims on direct appeal and his numerous failures to timely file collateral appeals are recognized procedural defaults," and Smith fails to establish cause and prejudice, or actual innocence, to excuse his multiple procedural defaults.  (Doc. No. 11 at 35; Doc. No. 22 at 4-6.)

In his Petition, Smith asserts he failed to file a direct appeal because the trial court did not inform him of his appellate rights or his right to counsel to appeal his convictions.  (Doc. No. 1 at 7.)  In his Traverse, Smith argues that he filed a motion for delayed appeal pursuant to Ohio App.R. 5 once he learned he had not been notified or advised of his appellate rights, which was denied.  (Doc. No. 21 at 16.)

17

He also argues he was never provided with appointed counsel, in violation of his Sixth Amendment rights, and he was denied due process of law in violation of the Fourteenth Amendment by not being advised of his appellate rights or procedures in state court. (*Id.*)

On April 13, 2018, Smith filed an untimely notice of appeal regarding the trial court's May 2016 sentencing entries (Doc. No. 11-1, Ex. 55), along with a motion for leave to file a delayed appeal and appointment of counsel. (Doc. No. 11-1, Ex. 56.) One of the grounds Smith raised in his motion for leave to file a delayed appeal was that the judgment and sentences were void. (*Id.* at PageID# 420.)

On May 2, 2018, the state appellate court denied Smith leave to file a delayed direct appeal and dismissed Smith's attempted appeal. (Doc. No. 11-1, Ex. 58.) The state appellate court found, "According to the judgment of conviction, the trial court notified appellant of his appellate rights. Furthermore, appellant has not demonstrated otherwise. Accordingly, appellant has failed to provide sufficient reasons to justify the delay." (*Id.*)

On June 18, 2018, Smith, timely filed a notice of appeal in the Ohio Supreme Court. (Doc. No. 11-1, Ex. 59.) On August 1, 2018, the Ohio Supreme Court declined to accept jurisdiction of Smith's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 11-1, Ex. 62.)

Furthermore, it is well-established that, in Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Engle*, 456 U.S. at 125 n. 28.

Accordingly, the first three elements of the *Maupin* test are satisfied as Smith failed to comply with the state's procedural rules, the state appellate court actually enforced the rules, and the rule constitutes "independent and adequate" state grounds on which the state can foreclose federal review. As such, the Court finds Ground Two of the instant Petition is procedurally defaulted.

18

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason*, 320 F.3d at 629.

### a.      Cause and Prejudice

Smith appears to argue cause and prejudice exist as a result of his "due process rights being violated" when the trial court "negated to inform [him] of any appellate rights or of [his] constitutional right to counsel to appeal the judgment of convictions."  (Doc. No. 1 at 7.)

First, Smith's argument that he was unaware of his appeal rights is not well-taken, as he preserved the record for appeal on a grand jury issue during his change of plea hearing before the trial court.  (Doc. No. 11-3, Vol. 2, Page ID# 932.)

Second, the plea agreements Smith signed stated: "I understand my right to appeal a maximum sentence, my other limited appellate rights, and that any appeal must be filed within 30 days of my sentence."  (Doc. No. 11-1, Ex. 13, 17.)  Furthermore, the plea agreement stated, "I have either read this Written Plea of Guilty or it has been read to me and I understand it, and I wish to waive all of the rights set forth, [sic] herein and voluntarily plead GUILTY to the charge(s) set forth above."  (*Id.*)  These agreements were also executed by stand-by counsel.  (*Id.*)  During the plea colloquy, Smith testified he had gone over the agreement with stand-by counsel and understood everything in the forms he signed. (Doc. No. 11-3, Vol. 2, PageID# 966-67.)

19

As Smith fails to show cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. at 533–34.

>   b.      **Actual Innocence**

As noted above, a petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749–50. In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. *See also Jones*, 489 F. Supp. 2d at 807; *Allen*, 2012 WL 3711552, at *7. A petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id*. at 316.

Here, Smith asserts he is innocent of robbery, which he claims is borne out by the statements made in the presentence investigation report, which he argues means "the trial court knew that although Smith plead guilty he still felt he was innocent of robbery." (Doc. No. 21 at 23.) Smith also argues he "was induced and coerced by the state trial court judge whom initiated the plea deal on behalf of the state." (*Id.*)

First, Smith fails to present any new evidence of actual innocence that would overcome his guilty pleas. As the Southern District of Ohio has explained:

>   Where, as here, "the petitioner is claiming actual innocence after having entered a guilty plea, '[t]he application of *Schlup* ... creates a host of analytical difficulties," because the Petitioner has already confirmed his guilt "through

the solemnity of a plea colloquy." *Wiles v. Warden*, No. 1:14-cv-685, 2015 WL 4467766, at *6 (S.D. Ohio July 21, 2015) (citing *Eads v. Bottom*, No. 6:13–CV–29–JMH–REW, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (and cases cited therein as recognizing those problems)).

> [P]etitioner's claim of actual innocence is contradicted by the fact that petitioner pleaded guilty in open court ... which amounted to an admission that he committed those offenses. *Cf. Dyson v. Tibbals*, No. 5:13cv321, 2014 WL 2890519, at *16 (N.D. Ohio June 25, 2014) (holding that a credible claim of actual innocence had not been shown because petitioner's guilty plea, as well as statements made by the petitioner during sentencing, "contradict[ed] any claim of actual innocence"); *Eads, supra*, 2014 WL 2742581, at *7–10 & n.11 (in rejecting the petitioner's actual-innocence claim based on unreliable affidavits submitted by two witnesses years after the offense without explanation and in opposition to statements made by the witnesses at the time of the offense, the district court concluded that "ultimately, [the petitioner's] own words sink his argument" given that the petitioner had signed a plea agreement admitting to the offenses at issue); *Pugh v. Sheldon*, No. 1:10cv1648, 2011 WL 8185586, at *12 (N.D. Ohio July 8, 2011) (Report & Recommendation) (quoting *Logan v. Booker*, No. 2:06cv14240, 2007 WL 2225887, at *4 (E.D. Mich. Aug. 1, 2007) ) ("When considering a petitioner's assertion that he is innocent, 'the self-inculpatory statements he made under oath at his plea allocution carry a strong presumption of verity, and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant.' "), *adopted,* 2012 WL 2533405 (N.D. Ohio June 29, 2012); *Gilmer v. Curtin*, No. 1:13cv425, 2014 WL 769447, at *6 (W.D. Mich. Feb. 26, 2014) ("While pleading guilty may not outright preclude Petitioner from claiming actual innocence, ... it seriously undermines his claim."). *Cf. Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (holding that the petitioner's "claimed lack of knowledge," which stood "in stark contrast to his admissions of guilt before the district court," was insufficient to overturn his guilty plea).

> *Id.* at *8.

*Haynie v. Buchanan*, No. 2:18-CV-1781, 2019 WL 926031, at **2–3, 2019 WL 5790995 (Feb. 26, 2019) (quoting *Wiles v. Warden*, No. 1:14-cv-685, 2015 WL 4467766, at *8 (S.D. Ohio July 21, 2015)).

Likewise, the plea agreements Smith executed state, "By pleading guilty I admit committing the offense(s) and will tell the Court the facts and circumstances of my guilt." (Doc. No. 11-1, Ex. 13, 17.) Smith did not enter an *Alford*[4] plea.  Furthermore, the plea agreements state no promises were made to get Smith to plead guilty (Doc. No. 11-1, Ex. 13, 17), and he testified no promises had been made other than what he had heard his attorney and the prosecutor place on the record.  (Doc. No. 11-3, Vol. 2, PageID# 956.)

Second, a review of the pre-trial motion/change of plea hearing transcript reveals a detailed exchange between the trial court judge and Smith, who had the benefit of stand-by counsel, regarding the State's proposed offer.  (Doc. No. 11-3, Vol. 2, PageID# 941-54.)  The trial court raised the offer by saying:

> I want to talk one more time about this offer, because I feel as if you go any farther down the line in preparation and all of those things, the opportunity or the offer that was presented to you last week for an F-3 robbery and an F-3 weapon under disability is going to be most likely taken off the table and you're not going to have an opportunity at that time.  And so I just – I want to make sure that you're clear about what you're facing if convicted . . . .

(*Id.* at PageID# 941.)  The trial court then explained the charges and sentencing exposure facing Smith just in Case No. CR-2015-09-2837.  (*Id.* at PageID# 941-43.)  Under the plea agreement, maximum exposure would be four years.  (*Id.* at PageID# 943.)  The trial court told Smith that while it made no promise that he would not receive the maximum four years, the potential of him receiving the maximum on the reduced charges was "reduced significantly."  (*Id.* at PageID# 944.)  Smith responded: "Your Honor, I've thought about it, and, you know, I want this case to go away.  I'm not saying I been perfect, but I never robbed no one.  That – that just irks me.  Even in my 2000 case, I never robbed no one.  They charge me with complicity. So I mean, I went – I got eight years for something I didn't do.  And now I'm falsely accused

---

[4] Under *North Carolina v. Alford*, 400 U.S. 25 (1970), a defendant may enter into a plea agreement for strategic reasons (*e.g.*, fear of conviction at trial on this count and other counts that may be dismissed as a result of the plea) even if he is "unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37.

again."  (*Id.* at PageID# 945.)  The trial court replied that something had transpired, and suggested Smith

talk to stand-by counsel.  (*Id.*)  In addition, the trial court stated:

> I just – I want you to just consider your maximum exposure on the plea versus
> your minimum exposure, just minimum exposure, if convicted.  And you got
> to balance those things.
>
> And I'm not pressuring you.  If you want your day in court, you want a trial,
> we will most likely and more than willingly have that trial.  But I want you to
> seriously consider what your maximum exposure is on a plea versus your
> minimum exposure on conviction.

(*Id.* at PageID# 945-46.)

Stand-by counsel informed the trial court the snag in the plea negotiations for Smith was the actual

robbery charge and not the amount of potential prison time, and the State responded by saying it believed

the elements of robbery were met and so the State was unwilling to move from the robbery charge.  (*Id.* at

PageID# 946-50.)  As the trial court was preparing to conclude the hearing, stand-by counsel raised the

issue of whether Smith accepting the State's offer that day would impact how the Court viewed his bonds.

(*Id.* at PageID# 950-51.)  The trial court responded: "I understand.  I suppose what I would consider is,

especially in light of the reduction and the, you know, the dismissal of the other gun charge or – not gun,

drug charges, I probably would let him out awaiting sentence, with the understanding any new charges of

any violations or the defendant not showing up negates any agreement with regards to running anything

concurrent and merging."  (*Id.* at PageID# 951-52.)  Stand-by counsel told the trial court Smith asked if he

resolved it that day if he would get out that day.  (*Id.* at PageID# 952.)  The trial court responded:

> But I want you to understand something.  You know, you – I will strongly
> consider it.  But there are no promises.  And so I don't want you pleading
> because you think the only reason you're going to plead is to get out.  I mean,
> this is a resolution that, in my – that benefits you to some extent and benefits
> the State of Ohio, but I want you doing it because that's what you think is the
> best way to resolve the case.  I don't want you doing it because, "If I do it
> today, I'm getting out."

23

(*Id.* at PageID# 952-53).  Smith replied, "I don't mean it like that, but just to get it over with."  (*Id.* at PageID# 953.)  The trial court responded:

> But some people do and people come back and say, "I now want to withdraw my plea because," you know, whatever, whatever, whatever.  For whatever reason.
>
> And I want to make sure that, you know, you understand that this is for a presentence investigation with a victim impact statement. . . .

(*Id.*)

At that point, stand-by counsel stated Smith wanted to resolve the case for the proposed offer.  (*Id.* at PageID# 954.)

The hearing transcript and the plea agreements Smith signed negate his claim that he was "induced and coerced" to plead guilty by the trial court judge despite his actual innocence.  The trial court judge was very clear no promises were being made on sentencing or release.  Smith, with the benefit of stand-by counsel, determined pleading guilty was the best way to resolve his cases.

Accordingly, and for all the reasons set forth above, it is recommended Ground Two be dismissed as procedurally defaulted.

## 2.    Ground Three

In Ground Three, Smith argues he "was coerced/induced to enter guilty by the actions of the trial court judge."  (Doc. No. 1 at 8.)  In support, Smith asserts:

> Without prompting the trial court judge initiated a non-negotiated plea the state offered weeks prior that was rejected. I felt I could not receive a fair trial and that the judge was bias [sic]. The discussion of a non prison sanction, and getting out of the county jail that day, which I in jail on a revoked bond.  I folded and entered guilty pleas that were not intelligently, voluntarily, or knowingly made.

(*Id.* at 8-9.)

Respondent argues Smith failed to fairly present the same theories and claims to the state courts as he does in Ground Three.  (Doc. No. 11 at 28; Doc. No. 22 at 4-5.)  Respondent further argues, "Smith's

failure to raise his federal constitutional claims on direct appeal and his numerous failures to timely file collateral appeals are recognized procedural defaults," and Smith fails to establish cause and prejudice, or actual innocence, to excuse his multiple procedural defaults.  (*Id.*)

In his Petition, Smith asserts he failed to file a direct appeal because the trial court did not inform him of his appellate rights or his right to counsel to appeal his convictions.  (Doc. No. 1 at 9.)  In his Traverse, Smith argues that he filed a motion for delayed appeal pursuant to Ohio App.R. 5 once he learned he had not been notified or advised of his appellate rights, which was denied.  (Doc. No. 21 at 16.)  He also argues he was never provided with appointed counsel, in violation of his Sixth Amendment rights, and he was denied due process of law in violation of the Fourteenth Amendment by not being advised of his appellate rights or procedures in state court.  (*Id.*)

On June 30, 2016, Smith, *pro se*, filed a motion to withdraw his guilty pleas.  (Doc. No. 11-1, Ex. 21.)  The trial court denied Smith's motion in Case No. CR-2015-12-3774 on July 19, 2016 and denied Smith's motion in Case No. CR-2015-09-2837 on July 20, 2016.  (Doc. No. 11-1, Ex. 24-25.)  Smith did not timely appeal these decisions (Doc. No. 11-1), and thus procedurally defaulted this claim.  Furthermore, it is well-established that, in Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Engle*, 456 U.S. at 125 n. 28.

On April 13, 2018, Smith filed an untimely notice of appeal regarding the trial court's May 2016 sentencing entries (Doc. No. 11-1, Ex. 55), along with a motion for leave to file a delayed appeal and appointment of counsel.  (Doc. No. 11-1, Ex. 56.)  One of the grounds Smith raised in his motion for leave to file a delayed appeal was that his guilty pleas were not made intelligently, knowingly, or voluntarily.  (*Id.* at PageID# 420.)  In his affidavit in support, Smith averred: "If it were not for [sic] court's participation by initiating the non negotiated plea deal , I had no intentions of entering a plea of guilty; and

25

because [sic] the judge's action I felt compelled to enter a guilty plea because I could not receive a fair trial in the Summit County Common Pleas Court[.]" (*Id.* at PageID# 424.)

On May 2, 2018, the state appellate court denied Smith leave to file a delayed direct appeal and dismissed Smith's attempted appeal. (Doc. No. 11-1, Ex. 58.) The state appellate court found, "According to the judgment of conviction, the trial court notified appellant of his appellate rights. Furthermore, appellant has not demonstrated otherwise. Accordingly, appellant has failed to provide sufficient reasons to justify the delay." (*Id.*)

On June 18, 2018, Smith, timely filed a notice of appeal in the Ohio Supreme Court. (Doc. No. 11-1, Ex. 59.) On August 1, 2018, the Ohio Supreme Court declined to accept jurisdiction of Smith's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. No. 11-1, Ex. 62.)

Smith failed to present the same claim in his motion for delayed appeal as he does in his habeas petition and therefore this claim is procedurally defaulted on fair presentment grounds. Even assuming Smith had presented the same claim in his motion for delayed appeal, the first three elements of the *Maupin* test are satisfied as Smith failed to comply with the state's procedural rules, the state appellate court actually enforced the rules, and the rule constitutes "independent and adequate" state grounds on which the state can foreclose federal review.

For all these reasons, the Court finds Ground Three of the instant Petition is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.) As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin*,

434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason*, 320 F.3d at 629.

Smith makes the same arguments for cause and prejudice, as well as actual innocence, as he did for Ground Two.  For the reasons set forth earlier in this opinion, Smith fails to establish cause and prejudice, or actual innocence, to excuse his procedural defaults of Ground Three.

Accordingly, and for all the reasons set forth above, it is recommended Ground Three be dismissed as procedurally defaulted.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED.

Date:  February 1, 2021

   *s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**